**Charles W. OLSHOCK et al.,**
**Plaintiffs,**

v.

**VILLAGE OF SKOKIE, a Municipal Corporation, et al., Defendants.**

**No. 75 C 3056.**

United States District Court,
N. D. Illinois, E. D.

Oct. 2, 1975.

Robert A. Tingler and Freeman & Tingler, Chicago, Ill., for plaintiffs.

Harvey Schwartz, Skokie, Ill., Gilbert Gordon, Chicago, Ill., and Robert J. Di-

Leonardi and DiLeonardi & O'Brien, Des Plaines, Ill., for defendants.

## MEMORANDUM

PERRY, District Judge.

This case comes on upon the motion of plaintiffs for a preliminary injunction to be issued by this court restraining and enjoining defendants herein from filling Skokie Police patrolmen vacancies and further ordering that the Village of Skokie and the Board of Fire and Police Commissioners for the Village of Skokie restore and reinstate all the plaintiffs to their respective ranks and pay pending the disposition of the matters complained of in this cause. The court has heard evidence upon said complaint that has been presented by all of the parties to this cause and has heard argument of counsel for all of the parties. The court has now considered all of the foregoing.

The court finds that a serious threat exists to the safety and welfare of the 68,000 citizens and residents of the Village of Skokie because of the vacancy of approximately thirty police officers to patrol the streets, direct excessive through traffic which is beyond the control of the said Village, and to carry out necessary police duties. The court finds that the plaintiffs and thirty or more other police officers engaged in negotiations with the Village of Skokie and its officials over salary increases up to July 3, 1975 without reaching any agreement and that on and after July 3, 1975 and until July 14, 1975 the plaintiffs and the other policemen joined in a concerted effort to coerce the Village of Skokie to accede to their demands. Said efforts consisted in all of the plaintiffs and thirty or more other police officers reporting for duty out of uniform and refusing to work in uniform. The court finds that there were then in full force and effect regulations in Skokie that required said police to wear uniforms on duty and that all of the plaintiffs were well aware of said regulations. The court finds that said plaintiffs were ordered to put on their uniforms and perform their duties and that they all refused so to do and that said refusal began July 3, 1975 and continued until July 14, 1975.

The court specifically finds that the plaintiffs all wilfully disobeyed orders and did in fact engage in and did peacefully withdraw from rendering service as police officers to the Village of Skokie in their uniforms during all of said period of time which did constitute and was in fact a strike by public employees contrary to the law of the State of Illinois and that they were not merely engaged in a lawful protest, as they maintain.

■ There is a constitutional right to vote, to have due process, to have equal protection of the laws, to have freedom of speech and the right to worship God or not God. But there is no constitutional right to strike. That right can only be granted by law. There is no federal law that grants policemen the right to strike and there is no law in the State of Illinois that grants policemen the right to strike; but on the contrary the law of the State of Illinois prohibits them from striking.

The court finds that as a result of the strike of the plaintiffs and other policemen against Skokie that the wives of some of the policemen forcibly took possession of the Village Hall for several days. During that time they permitted one of the plaintiffs who was president of the union, to which plaintiffs belonged, to enter the building but they restrained all Village employees, officers and all other persons from entering said Village Hall, even evicting one of the Village officials when he gained entrance. In so doing they brought about a state of chaos and completely disrupted the affairs of Skokie.

A further result was a near breakdown in law enforcement and a failure to adequately enforce law and order

with the result that there existed in Skokie a dangerous situation.

The plaintiffs and other police officers were suspended and resuspended, but without notice and hearing and accordingly without due process of law. This court does not find fault with Skokie or any of its officials in disciplining the plaintiffs or other policemen for their conduct, but rather finds that said disciplinary measures were taken without due process of law being afforded to the plaintiffs and other police officers.

Immediately before July 14, 1975 there were conferences that resulted in misunderstandings concerning the plaintiffs and other police officers returning to duty. The plaintiffs maintain that they were told by the Village attorney that those who returned to duty on July 14, 1975 would be disciplined by being suspended after an administrative hearing if found guilty but that none of the plaintiffs or other policemen would be discharged. The Village officials deny that such a promise was made but maintain that the only promise made was that those who reported on July 14, 1975 would stand trial and would be suspended or discharged depending upon the evidence.

Thereafter all of the police officers except the plaintiffs who had peaceably withdrawn their services as police officers in uniform from Skokie appeared for trial at administrative hearings and technically pleaded "not guilty" but signed a stipulation of fact wherein they admitted that they did refuse to perform duty in uniforms and did disobey orders to put on their uniforms and perform duties. Said policemen were then found guilty and suspended from duty for specific periods of time without pay. A part of the agreement of said police officers so suspended was that they would not be represented by counsel for the police union or other counsel.

Plaintiffs all refused to enter into the foregoing arrangement but chose to have counsel represent them, to plead not guilty and to go to trial. All plaintiffs were tried, found guilty and were forthwith discharged. The court finds that the evidence upon which the plaintiffs were found guilty was identical to the evidence to which all the other police officers stipulated and upon which they were all found guilty and suspended without pay for specific periods, but not discharged as were the plaintiffs.

■ This court finds as a matter of fact and concludes as a matter of law that the Village of Skokie and its officers in their acts as aforesaid denied the plaintiffs their constitutional rights to equal protection of the law and likewise denied them their constitutional right to counsel.

The court further finds as a matter of fact that the plaintiffs have established a likelihood that they will be successful upon the merits herein when this case comes on for trial and that unless injunctive relief is granted they will be irreparably injured and damaged by the acts of the Village of Skokie and its officials.

Furthermore the court finds that Skokie cannot adequately fill the vacancies of the plaintiffs on the police force with competent police officers for upward of six months and that the present inadequate police force is almost all upon a twelve hour duty basis and that therefore a grave emergency exists for the general public in and around Skokie that may very well lead to a great tragedy.

The court finds that the Village officials and attorneys have acted in good faith in a most difficult situation and that their acts have been generally commendable and that of the plaintiffs have not been so. The court finds and concludes that the Village officials at the present in their zeal are overlooking the general public interest and need for an immediate police force to protect the general public and are too much concerned with punishing the plaintiffs.

The discharge of police officers who have given years of service to Skokie is

indeed harsh punishment, especially when others equally guilty and standing in the same shoes as plaintiffs are merely suspended for thirty days or less without pay. So was the treatment of the people of Skokie by the plaintiffs and other police officers even more harsh and intolerable. However, two wrongs do not make a right.

The court finds that the proper relief in this case is to grant the motions of plaintiffs during the time this case is pending and until it is tried without any provisions for back pay and without prejudice to Skokie to its right to proceed with examinations, interviews and other action necessary to qualify police officers as vacancies occur or to replace the plaintiffs in the event they are not successful in this suit.

The court finds that the parties who should be restrained, enjoined and otherwise ordered herein are all of the defendants as they are named in the amended complaint filed herein on September 29, 1975.

The court finds there is no need for a bond to be posted herein by any of the plaintiffs.

■ The court finds that while the plaintiffs have not come into this Court of Equity with clean hands, that the general public will suffer irreparable damages if the relief sought is not granted and that the general public, which is not represented before this court, must be protected in this instance, even though it redounds to the benefit of the plaintiffs. Therefore injunctive relief should be granted to plaintiffs for the benefit of the general public.

The court finds that defendants will suffer no damages on account of the execution of this order but on the contrary that they will benefit thereby and that there is no need for a bond or surety by plaintiffs. The court finds that any substantial bond or surety requirement would be beyond the capability of many

of the plaintiffs and therefore concludes that this being a civil rights controversy that none should be required of the plaintiffs upon the entry of a decree herein.