Jerome CROWLEY, Anthony Coyne, Joseph Fahey, Robert Lunnin, James Hayes, Gerald Owens, John Lynch, Joseph Trask, and Joseph Montana, Plaintiffs,

v.

LOCAL NO. 82, FURNITURE AND PIANO MOVING, FURNITURE STORE DRIVERS, HELPERS, WAREHOUSEMEN, AND PACKERS; Bart Griffiths, Secretary-Treasurer, Local No. 82; George Harris, President Local No. 82; Phillip Piemontese, Chairman of the Election Committee of Local 82; and John Doe, James Doe and Jerome Doe, Members of the Election Committee of Local 82, Defendants.

Civ. A. No. 80–2680–K.

United States District Court, D. Massachusetts.

July 13, 1981.

Kurt Pressman, Mark Stern, Benjamin Hiller, Goldstein, Pressman & Stern, Cambridge, Mass., for plaintiffs.

Kathryn M. Noonan, Noonan and Robboy, Boston, Mass., Gary S. Witlen, Esq., Washington, D. C., for defendants.

Lawrence E. Katz, Newton, Mass., for Honest Ballot Association.

Memorandum

KEETON, District Judge.

### I.

### Introduction and Procedural History of the Litigation

This case arises out of a dispute concerning a meeting of the membership of the Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers, Local No. 82 ("Local 82"), which is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the International"), on November 9, 1980, at which the nomination of candidates for the Local's Executive Board was conducted. Plaintiffs, nine members of Local 82, brought this action on behalf of themselves and two classes[1] of Local members against the Local, Bart Griffiths, its secretary-treasurer, George Harris, its president, and Phillip Piemontese, the chairman of its election committee.[2] Plaintiffs allege that defendants violated Title I of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411–415 ("LMRDA" or "the Act") by denying plaintiffs their rights to attend union meetings and nominate candidates on an equal basis with other Local members, and to speak freely on matters relating to union business without reprisal. In addition, plaintiffs claim that the union rule that only members who have paid their dues on time for the twenty-four consecutive months before the nominations meeting may be candidates for Local office ("the 24 month rule")[3] constitutes an unreason-

---

1. This court has not been requested to certify either of the proposed classes.

2. Unidentified members of Local 82's election committee were also named as defendants.

3. Article II, section 4(a)(1) of the 1976 Constitution of the International Union ("International Constitution") provides that:

To be eligible for election to any office in a Local Union, a member must be in continuous good standing in the Local Union in which he is a member and in which he is seeking office, and actively employed at the craft within the jurisdiction of such Local Union, for a period of twenty-four (24) consecutive months prior to nomination for said

able restriction on plaintiffs' right to seek union office in violation of Title IV of the Act, 29 U.S.C. § 481(e). Defendants argue that because the conduct at issue bears upon the procedures for conducting union elections, plaintiffs' exclusive remedy is to file a complaint with the Secretary of Labor under Title IV of the LMRDA, and that 29 U.S.C. § 483 and the Supreme Court's decision in *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), deny this court jurisdiction over this action.

The Local's election was to be completed December 13, 1980. On December 12, 1980, after hearing, the court entered a temporary restraining order to avoid irreparable harm to the plaintiffs and to preserve both the status quo and the court's jurisdiction. *See* note 12, *infra*. The restraining order provided that pending further order of the court:

> The ballots to be received by Local 82 from P.O. Box 530, East Milton, Massachusetts, on December 13, 1980 at 9:00 a. m. and any other ballots received by Local 82 in any other way shall not be counted but shall be collected, sealed, and delivered immediately thereafter to an officer of this court in whose custody they shall remain until further order of

the court. If the court determines, after hearing, that the ballots collected on December 13, 1980 should be counted, they shall be counted under the same conditions and limitations prevailing on December 13, 1980, unless otherwise ordered by this court.

The court conducted evidentiary hearings on plaintiffs' motion for a preliminary injunction for five days in December 1980. On January 9, 1981, counsel for defendants wrote to the court stating "that the union is prepared to hold a new nomination meeting and mail ballot election, with the permission of the Court." On January 15 and 22, 1981, defendants filed stipulations[4] concerning how Local 82 would conduct the new election.

During hearings in January 1981, it became apparent that the parties could not reach an agreement on the terms and conditions under which a new nominations meeting and election would be conducted. On January 30, 1981, plaintiffs filed a "Motion to Amend Complaint to Conform to the Evidence,"[5] which sought to add claims that since September 1976 defendants had increased union dues without complying with 29 U.S.C. § 411(a)(3), and that defendants had violated the equal rights and free

---

office and must be eligible to hold the office if elected. "Continuous good standing" means compliance with the provisions of Article X, Section 5 concerning the payment of dues for a period of twenty-four (24) consecutive months, together with no interruptions in active membership in the Local Union for which office is sought because of suspensions, expulsions, withdrawals, transfers or failure to pay fines or assessments. . . .

*See also* Article VI, section 3(b) of the "Constitution and By-Laws of Local 82" ("Local By-laws"):

(b) Every member in good standing, by the payment of his dues on or before the last business day of the current month, in accordance with the International Constitution, and who has been in such continuous good standing for each consecutive month in the twenty-four (24) month period immediately prior to nominations and who has attended at least fifty percent (50%) of the regular or divisional meetings of the Local Union during the twenty-four (24) consecutive months prior to nomination, shall be eligible to hold office, if he is otherwise qualified under the International Constitution and these By-Laws. . . .

No member shall lose his good standing status for any month in which his dues have been withheld by his employer for payment to the Local Union pursuant to his voluntary authorization provided for in a collective bargaining agreement by reason of delay or default in the payment of such dues by the employer to the Local Union. . . .

4. In response to explicit and prolonged inquiry by the court, defendants' counsel stated that the stipulations were not offers of settlement that would have no legal effect if they were not agreed to by plaintiffs, but instead were binding representations to which defendants would adhere regardless of plaintiffs' position. *See* Tr. February 27, 1981 hearing, pp. 9–12. On the basis of these stipulations, defendants argue that plaintiffs' Title I claims are moot and that this court lacks jurisdiction to grant additional relief. *But see* part II–B, *infra*.

5. Plaintiffs had previously amended their complaint on December 1, 1980 before defendants had filed their answer. *See* Fed.R.Civ.P. 15(a).

speech provisions of Title I, 29 U.S.C. § 411(a)(1) & (2) by applying the 24 month rule in a discriminatory fashion and in retaliation for plaintiffs' expression of views critical of the defendant incumbent officers of Local 82. The motion to amend included an additional prayer for relief requesting that the court declare that

> all dues increases by Local 82 since September 1976 are invalid and that any member of Local 82 is eligible for union office if he is in compliance with the 24 month rule once all his dues payments in excess of $9.00 [the dues rate in effect before September 1976] are credited prospectively towards subsequent dues payments, and he is otherwise eligible for union office.

Defendants opposed the motion to amend, contending that the issues raised by the motion, in particular the legality of dues increases implemented by Local 82 since September 1976, had not been tried by the parties during the hearings on the motion for preliminary injunction. At a hearing on February 27, 1981, the court found that evidence concerning the dues claim had been offered at the earlier hearings, but that the dues claim had not been fully litigated. Because the relief requested on the dues claim would affect candidate eligibility in a new election, the court allowed the motion to amend, and gave the parties an opportunity to present additional evidence at a hearing which was conducted on March 6, 1981. The court also heard argument on defendants' motion to dismiss the amended complaint at the March 6th hearing.

After determining for the reasons set forth in part III–B, *infra,* that a new nominations meeting and election must be conducted under the supervision of a neutral third party, on February 12 and April 21, 1981 the court issued proposed orders concerning the conduct of the election and invited the parties to submit their positions concerning the terms of the order. Extensive discussions on the form of the order were conducted at conferences on February 20 and 27, and April 23, 1981. *See* part V, *infra.* At the conclusion of the latter conference, the parties were given additional time to submit their positions concerning defendants' request for a stay pending appeal.

The remainder of this memorandum is organized as follows: Part II addresses the jurisdictional issues raised in this action. Part III sets forth the court's findings of fact and conclusions of law concerning the availability of preliminary relief on plaintiffs' claims that the manner in which defendants conducted the November 9, 1980 nominations meeting violated Title I of the LMRDA. The court's findings and conclusions on plaintiffs' dues claim are stated in part IV. Finally, issues relating to the form of the court's order, including defendants' request for a bond and stay pending appeal, are addressed in part V.

## II.

### Jurisdiction

A. The Impact of Title IV on the Court's Jurisdiction

For the purposes of resolving the jurisdictional questions now before the court plaintiffs' claims may be divided into four categories:[6] (1) claims that by refusing to allow some of the plaintiffs to attend the November 9, 1980 nominations meeting and refusing to allow other plaintiffs to nominate candidates of their choice for union office in retaliation for plaintiffs' criticism of the incumbent officers, defendants violated Title I of the Act by denying plaintiffs their "equal rights . . . to nominate

---

**6.** In addition to the claims relevant to the motion for a preliminary injunction, plaintiffs also alleged that defendants disciplined plaintiff Robert Lunnin without complying with the due process requirements set forth in 29 U.S.C. § 411(a)(5), and in retaliation for Lunnin's exercise of his right to free speech guaranteed by 29 U.S.C. § 411(a)(2) (Complaint ¶¶ 51–52). However, on January 15, 1981, the parties informed the court that Teamsters Joint Council 10 overturned the disciplinary sanctions imposed on Lunnin.

candidates [and] to attend membership meetings," 29 U.S.C. § 411(a)(1),[7] and their rights "to meet and assemble freely with other members, and to express any views ... [including] ... views upon candidates ...." 29 U.S.C. § 411(a)(2)[8] ("discrimination and free speech claims") (Complaint ¶¶ 43–48); (2) claims that the 24 month rule on its face violates Title I because it has a disparate impact on Local members who pay their dues directly to the Local and claims that defendants applied the 24 month rule in a discriminatory fashion in retaliation for plaintiffs' expression of their views in violation of 29 U.S.C. § 411(a)(1) and (2) ("Title I 24 month rule claims") (Complaint ¶ 50, Amended Complaint ¶¶ 54–55); (3) the claim that the 24 month rule constitutes an unreasonable restriction on nominations and eligibility for union candidacy in violation of Title IV of the LMRDA, 29 U.S.C. § 481(e)[9] ("Title IV 24 month rule claim") (Complaint ¶ 49); and (4) the claim that defendants increased local dues without complying with 29 U.S.C. § 411(a)(3)[10] ("dues claim") (Amended Complaint ¶ 53).

7. 29 U.S.C. § 411(a)(1) states that:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

8. 29 U.S.C. § 411(a)(2) states that:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

9. 29 U.S.C. § 481(e) states that:

> In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues. The votes cast by members of each local labor organization shall be counted, and the results published, separately. The election officials designated in the constitution and bylaws or the secretary, if no other official is designated, shall preserve for one year the ballots and all other records pertaining to the election. The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.

10. 29 U.S.C. § 411(a)(3) provides that:

> Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—
>
> (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or
>
> (B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor or-

Defendants argue that because plaintiffs' discrimination and free speech claims and their Title I and Title IV 24 month rule claims arose out of a dispute concerning a nominations meeting conducted in preparation for a union election, plaintiffs' exclusive remedy is to file a complaint with the Secretary of Labor pursuant to Title IV of the LMRDA, 29 U.S.C. § 481 *et seq.*[11] 29 U.S.C. § 483 states that "[t]he remedy provided by this subchapter [Title IV] for challenging an election already conducted shall be exclusive." *See Dunlop v. Bachowski,* 421 U.S. 560, 566–67, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975); *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 530–36, 92 S.Ct. 630, 632–635, 30 L.Ed.2d 686 (1972).

However, at least with respect to actions challenging pre-election conduct,[12] Title I of the LMRDA establishes an alternative enforcement mechanism for remedying conduct interfering with a member's right to engage in the activities associated with union democracy. 29 U.S.C. § 412 provides that "[a]ny person whose rights secured by the provisions of this subchapter [29 U.S.C. § 411] have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." *See Kupau v. Yamamoto, supra* note 12, 622 F.2d at 454–56; James, Union Democracy and the LMRDA: Autocracy and Insurgency in National Union Elections, 13 Harv.C.R.–C.L.L.Rev. 247, 269, 316–17 (1978).

In *Calhoon v. Harvey, supra,* the Supreme Court addressed the relationship between claims arising under Titles I and IV of the LMRDA. There the plaintiffs had alleged that a seamen's union rule providing that to be eligible for nomination or election to union office, a person must have been a member of the union for five years and must have served 180 days or more of

ganization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and by-laws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.

11. 29 U.S.C. § 482(a) gives union members who have exhausted available internal union remedies (or who have invoked internal remedies without obtaining a final decision for "three calendar months") the right to file a complaint with the Secretary of Labor alleging the violation of any provision of 29 U.S.C. § 481 [which sets forth standards and procedures governing nominations and elections for union offices. *See* n. 9, *supra*]. The Secretary is required to investigate such a complaint, "and if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days of the filing of such complaint, bring a civil action ... to set aside the invalid election ... and to direct the conduct of an election ... under the supervision of the Secretary...." 29 U.S.C. § 482(b).

12. There is language in *Dunlop v. Bachowski, supra,* suggesting that Title I relates only to pre-election conduct:

Certain LMRDA provisions concerning pre-election conduct, 29 U.S.C. §§ 411–413 and 481(c) are enforceable in suits brought by individual union members. Provisions concerning the conduct of the election itself, however, may be enforced only according to the post-election procedures specified in 29 U.S.C. § 482. Section 483 is thus not a prohibition against judicial review but simply underscores the exclusivity of the § 482 procedures in post-election cases.

421 U.S. at 566–67, 95 S.Ct. at 1857. Although there is some support for the proposition that section 483 bars a Title I action brought after an election, *see McDonough v. Local 825, International Union of Operating Engineers,* 470 F.2d 261 (3d Cir.1972), such a result is inconsistent with the language of 29 U.S.C. § 411(a)(1) granting union members the equal right "to vote in elections." *See Kupau v. Yamamoto,* 622 F.2d 449, 456–57 (9th Cir. 1980). However, this question need not be addressed in the instant case both because the suit is addressed to pre-election conduct, *id.,* and because the court issued its temporary restraining order barring the completion of the election. *But cf. McDonough v. Local 825, supra; New Action Coalition v. Local 2, United Federation of Teachers,* 510 F.Supp. 1208, 1211 (S.D.N.Y.1981); *Laski v. International Organization of Masters, Mates & Pilots,* 502 F.Supp. 134, 135–36 (S.D.N.Y.1980) (where ballots had already been sent to local members, 29 U.S.C. § 483 barred suit under Title IV challenging conduct of election).

622

sea time aboard qualified vessels in each of two of the three preceding years denied plaintiffs their equal right to nominate candidates in violation of 29 U.S.C. § 411(a)(1). The Supreme Court affirmed the dismissal of the suit by the district court for want of jurisdiction, holding that plaintiffs had failed to state a claim under 29 U.S.C. § 411(a)(1), and "that possible violations of Title IV of the Act regarding eligibility are not relevant in determining whether or not a district court has jurisdiction under [29 U.S.C. § 412]." 379 U.S. at 139–40, 85 S.Ct. at 295–296. In so doing, the Court rejected the plaintiffs' contention that 29 U.S.C. § 411(a)(1) "guarantees members . . . a right to nominate anyone without regard to valid union rules," holding that the provision "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Id.* at 138–39, 85 S.Ct. at 295.

Plaintiffs argue that even though *Calhoon v. Harvey* precludes a federal court from taking jurisdiction pursuant to 29 U.S.C. § 412 of an action based solely on violations of Title IV of the Act, the court should exercise "pendent jurisdiction" over plaintiffs' Title IV claim in order to avoid multiple proceedings arising out of the same controversy because plaintiffs' Title I claims already provide a sufficient basis for jurisdiction under 29 U.S.C. § 412. Although such a result would fulfill the Congressional objective of centralizing "in a single proceeding such litigation as might be warranted with respect to a single election," *Trbovich v. United Mine Workers, supra,* 404 U.S. at 532, 92 S.Ct. at 633, the proposition that individual union members may bring a pre-election suit challenging union regulations on Title IV grounds was rejected in *Calhoon v. Harvey, supra,* 379 U.S. at 140, 85 S.Ct. at 296:

Section 402 of Title IV [29 U.S.C. § 482] . . . *sets up an exclusive method for protecting Title IV rights,* by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of Title IV. Upon complaint

the Secretary investigates and if he finds probable cause to believe that Title IV has been violated, he may file suit in the appropriate district court. It is apparent that Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest. . . . *In so doing Congress . . . decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV.*

Emphasis supplied, citation and footnote omitted.)

Therefore, applying the principles articulated in *Calhoon v. Harvey* to the instant case, I conclude that this court lacks jurisdiction over plaintiffs' Title IV 24-month rule claim, as well as their claim that the 24-month rule on its face violates Title I because it necessarily "discriminates" against "spares," *i.e.,* members of the union who are not regular full-time employees and who therefore are very unlikely to be on "check-off" and to pay their dues on time each month. In *Calhoon,* the Supreme Court considered and rejected this latter claim that "discrimination" based on the "disparate impact" of a uniformly applied rule upon union members states a violation of Title I:

It is true [the plaintiffs] were denied their request to be candidates, but that denial was not a discrimination against their right to nominate [themselves], *since the qualifications were required equally of all members.*

*Id.* at 139, 85 S.Ct. at 295 (emphasis supplied). *See Driscoll v. International Union of Op. Eng., Local 139,* 484 F.2d 682, 688–89 (7th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974).

However, I conclude that this court does have jurisdiction over plaintiffs' other discrimination and free speech claims, including their claims that defendants applied the 24 month rule in a discriminatory fashion in retaliation for plaintiffs' exercise of their right to speak freely. Where "a union member has been discriminated against in

the exercise of his Title I rights," a federal court has jurisdiction over his Title I claims under 29 U.S.C. § 412, regardless of whether the member may also have claims arising under Title IV. *Kupau v. Yamamoto, supra,* 622 F.2d at 455; *McNail v. Amalgamated Meat Cutters & Butcher Workmen of North America,* 549 F.2d 538, 540–51 (8th Cir. 1977); *Schonfeld v. Penza,* 477 F.2d 899 (2d Cir. 1973); *Depew v. Edmiston,* 386 F.2d 710 (3d Cir. 1967). *See also Bunz v. Moving Picture Machine Operators, Local 224,* 567 F.2d 1117, 1120–24 (D.C.Cir. 1977).

**B. The Effect of Defendants' Stipulation**

▮ Defendants argue that because of their binding stipulation that they will conduct a new nominations meeting and election, *see* note 4, *supra,* plaintiffs' remaining Title I claims involving the disputed election are moot, and therefore this court lacks jurisdiction to enter a preliminary injunction.[13] Defendants' argument is plainly without merit. "[T]he voluntary cessation of allegedly illegal conduct ... does not make [a] case moot," *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), unless the defendant can meet its "heavy" burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated." *Id.* at 633, 73 S.Ct. at 897 (footnote omitted); *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Where a defendant has voluntarily terminated unlawful conduct after litigation has commenced, "[t]he case should not be held moot unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Seay v. McDonnell Douglas Corp.,* 533 F.2d 1126, 1130 (9th Cir. 1976), (quoting *Pacific Maritime Ass'n v. International Longshoreman & Warehousemen's Union,* 454 F.2d 262 (9th Cir. 1971)). Because I conclude that plaintiffs have established a substantial likelihood that defendants violated Title I less than two months before offering their stipulation, *see* part III–B, *infra,* and defendants have a personal interest in retaining office in the forthcoming election, I cannot find that future violations of Title I could not reasonably be expected to occur. *See Lodge 1380, Brotherhood of Railway, Airline and Steamship Clerks v. Dennis,* 625 F.2d 819, 822–23 (9th Cir. 1980). Therefore, defendants' stipulation does not moot this case or deprive the court of power to grant injunctive relief.

**C. Plaintiffs' Failure to Exhaust Internal Union Remedies**

▮ Defendants argue that the court lacks jurisdiction over this action because plaintiffs have failed to exhaust available internal union remedies.[14] "[W]hether or not a plaintiff will be required to utilize his internal union appeals is a matter within the discretion of the trial judge." *Semancik v. United Mine Workers of America, District # 5,* 466 F.2d 144, 150 (3d Cir.

**13.** Because plaintiffs have requested costs and attorney's fees, which this court, in its discretion, may award to prevailing plaintiffs in Title I actions, *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the court would still have jurisdiction over plaintiffs' Title I election claims even if injunctive relief were no longer available because of a change in circumstances. *See* 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3533, at 273 (1975) (collecting cases).

**14.** 29 U.S.C. § 411(a)(4) states that:
No labor organization shall limit the right of any member thereof to institute an action in any court ... *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organi-

zation, before instituting legal or administrative proceedings against such organizations or any officer thereof ....

Article XIX, § 12(a) of the International Constitution provides that:
Every member, officer, elected Business Agent, Local Union, Joint Council or other subordinate body against whom charges have been preferred and disciplinary action taken as a result thereof, or against whom adverse rulings or decisions have been rendered or who claims to be aggrieved, shall be obliged to exhaust all remedies provided for in this Constitution and by the International Union before resorting to any court, tribunal or agency against the International Union, any subordinate body or any officer or employee thereof.

1972). A plaintiff's failure to exhaust available internal union remedies will be excused in three situations: (1) where the right of appeal would be "inadequate, illusory or futile," *Keefe Bros. v. Teamsters Local Union No. 592*, 562 F.2d 298, 303 (4th Cir. 1977); (2) where local members do not receive adequate notice of the administrative remedies available to them, *Steib v. New Orleans Clerks & Checkers Local No. 1497*, 436 F.2d 1101, 1106 (5th Cir. 1971); and (3) where irreparable harm to the plaintiff will result which will adversely affect his or her employment or the exercise of rights secured by the LMRDA. *Semancik, supra*, 466 F.2d at 150–51; *Bradford v. Textile Workers of America, AFL–CIO*, 563 F.2d 1138, 1140–41 (4th Cir. 1977).

█ In the instant case, plaintiffs filed a protest concerning the conduct of the nominations meeting with Local 82, with Teamsters Joint Council 10 (which is the regional body containing Local 82), and with the International Union. On November 20, 1980, Local 82 denied the election protests. This action was filed December 1, 1980. A hearing before Joint Council 10, scheduled for December 23, 1980, was canceled "because of legal action pending in the United States District Court." To date, no action has been taken on the protests by either Joint Council 10 or the International Union.

In addition, plaintiffs do not dispute that they failed to pursue any of the intra-union remedies that may [15] exist for challenging the legality of dues increases implemented since September 1976. However, plaintiffs' dues claim is essentially simply a claim that in fashioning preliminary relief for defend-

ants' failure to conduct the nominations meeting in accordance with Title I, this court should not enforce eligibility criteria that rely upon a dues formula which, they contend, violates 29 U.S.C. § 411(a)(3). Because ordering a new election is necessary to prevent irreparable harm to plaintiffs' free speech rights within the union, *see* part III–B, *infra; Bradford v. Textile Workers, supra*, 563 F.2d at 1140–41, the court concludes that plaintiffs' failure to exhaust all internal union remedies before filing this action does not bar their claims for relief.

### III.

### Plaintiffs' Claims Concerning The Nominations Meeting

#### A. Findings of Fact

█ During the two months before the November 9, 1980 nominations meeting, several of the plaintiffs were outspokenly critical of the incumbent officers of Local 82 and encouraged other members to attend union meetings. At the September 1980 meeting of Local 82, plaintiff Robert Lunnin demanded that the forthcoming union elections be conducted by open ballot instead of the mail-in procedure used by Local 82. Lunnin, plaintiff Anthony Coyne, and others obtained over 100 signatures on petitions demanding "an open free election done in the democratic process," and submitted them to Local 82's Executive Board. On September 16, 1980, the Executive Board decided to conduct the election by mail ballot. In addition, at the September 1980 meeting of the Local, plaintiffs John Lynch, James Hayes, and Lunnin criticized

15. Plaintiffs contend that no internal union remedy is available for challenging the dues increases at issue here. Article XIX of the International Constitution establishes the procedures by which charges may be brought against "members, officers, elected Business Agents, Local Unions, Joint Councils or other subordinate bodies" for "[v]iolation of any specific provision of the Constitution or failure to perform any of the duties specified thereunder." Art. XIX, § 6(1). In the absence of any evidence that the procedures set forth in article XIX are inadequate, the court must conclude that the provision does create a means for securing relief from a dues increase implement-

ed in violation of article X, section 3 of the International Constitution. However, defendants have not offered evidence that any procedure exists by which a union member may dispute the legality of a provision of the International Constitution. In light of article III, section 1 of the International Constitution, which states that "The International Constitution shall be the supreme governing authority of the International Union ...," and the position taken by the defendants in this action, any attempt to pursue an internal union remedy challenging the legality of article X, section 3 of the International Constitution under 29 U.S.C. § 411(a)(3) is likely to be futile.

the incumbents for not distributing copies of the International Constitution to members of Local 82. As a result of their dissatisfaction with the incumbents, several of the plaintiffs, including John Lynch, announced their intention to seek office in the upcoming election.

Notices of the November 9, 1980 nominations meeting were not sent to the members of Local 82 as required by article VI, § 2 of the Local By-laws.[16] Instead, notices were sent to shop stewards at the various companies employing Local members (which are known as "barns") to be posted where they might be seen by members. As was the practice for notices of regular monthly meetings, the notice of the November 9, 1980 meeting included the statement that "members must have their receipts on their person and be paid for the month of Oct." [the preceding month].

Members arriving at the November 9, 1980 nominations meeting were informed at the door by defendant George Harris that no member would be allowed inside unless he could produce his "TITAN" "computerized dues receipt" indicating he had paid his dues through the previous month.[17] This announcement provoked an uproar among those assembled outside the meeting, who claimed that in the past members had been allowed into Local meetings after either presenting a "temporary" dues receipt signed by their shop steward or paying at the door. Shop stewards at the scene offered to receive dues at the door and give members temporary receipts. However, defendants refused to accept anything other than computerized dues receipts. Defendants Griffiths and Harris, as well as witnesses Kenneth Sprague and John Perry, testified that no member had been allowed into previous Local meetings without showing a computerized dues receipt. In light of the uproar caused by the announcement, the absence of any rule requiring that a computerized dues receipt be shown[18] to enter a Local meeting, and the more credible testimony of several witnesses that no such requirement had existed before November 1980, I find that members of Local 82 had not previously been required to show a computerized dues receipt to enter union meetings.

In contrast with the manner in which the dues requirement was applied to the members of Local 82, members of the Local's Executive Board were allowed into the nominations meeting without producing a receipt of any kind. According to defendant Griffiths, this was because he had made an independent examination of their dues records. However, at the same time, plaintiff Jerome Crowley was denied admission

16. Article VI, § 2 provides:
   Notice of Rules, Nominations, Meeting and Election. At least twenty (20) days prior to the date of the nomination meeting, specific notice of the date, time and place of the nomination and the offices to be filled shall be mailed or shall be published in any Local Union publication mailed to the membership (except that the notice of nominations, and election may be combined); each member shall be advised in such notice that the election rules are set forth in the By-Laws which are available upon request.
   Plaintiffs contend that defendants' failure to comply with this provision violated 29 U.S.C. § 411(a)(1) by denying them their equal right to nominate candidates. However, because there is no evidence that defendants *discriminatorily* sent notices to some but not all Local members, plaintiffs have not established a Title I violation. *See* part II–A, *supra.*

17. Local 82 maintained two systems for crediting members' dues payments. A member on "checkoff," *i.e.,* one who authorized his em-

ployer to deduct his union dues from his wages and forward them to Local 82, received a "computerized dues receipt" from the International Union's TITAN computer indicating the date and amount of payment and the month through which the member's dues had been paid. A member who is not on "checkoff" typically pays his dues to a shop steward, who gives him a "temporary" dues receipt and forwards the dues to the Local office. The Local then credits the dues payment to the member's account and forwards a computerized dues receipt to the member. *See* n. 22, *infra.*

18. Article VI, § 3(a) of the Local By-Laws states only that
   Every member whose dues are paid up through the month which is prior to the months in which the nominations or election is held shall have the right to nominate, vote for, or otherwise support the candidate of his choice.

to the nominations meeting even though defendant Griffiths had in his possession a computer printout indicating that plaintiff Crowley was fully up to date in his dues payments.

The meeting was conducted amidst loud shouting and arguments among members of the Local. There was conflicting testimony concerning what occurred at critical moments. Based on the evidence before me, I find that the following occurred at the meeting: [19]

Defendant Harris called the meeting to order and turned the meeting over to defendant Griffiths. After waiving the ordinary business, Griffiths announced that the Local would conduct nominations for the upcoming election. Griffiths announced that a Local By-law, article VI, section 3(b), allowing only members who had attended 50% of the meetings during the previous two years to be candidates for Local office would be "waived" for the 1980 election.[20] Then Griffiths explained the 24 month rule to the members and read lists of "ineligible" and "eligible" candidates. Plaintiffs Anthony Coyne and Robert Lunnin were at the top of the list of persons declared ineligible, which also included plaintiffs James Hayes and Jerome Crowley. Among those listed as eligible to run were the individual defendants Griffiths, Harris, and Piemontese and plaintiff Lynch, as well as Wilfred Pye, William Pye, Paul McGuire, and Joseph Crowley, all of whom held positions in the Local or were supporters of the incumbents.[21] When Griffiths finished reading from the eligibility lists, the members erupted with anger over the limited number of persons eligible to run. Griffiths was asked about the eligibility of the other "700" members in the union, and did not respond. After the tumult subsided, Griffiths opened the nominations for secretary-treasurer, the position he then held.

George Harris nominated Griffiths for a second term. The nomination was seconded. Griffiths then asked for additional names, and quickly began to close the nominations as plaintiff Lynch stood up and stated, "Wait a minute. You're going too fast. Am I eligible?" Griffiths briefly refused to recognize Lynch before answering in the affirmative. Then, plaintiff Joseph Cook nominated Lynch for secretary-treasurer. Plaintiff Hayes seconded the nomination. Griffiths then closed the nominations for secretary-treasurer and conducted the nominations for the other offices that were to be filled in the upcoming election.

At the conclusion of the nominations, Griffiths announced he would read the list of candidates for Local offices. Griffiths read only his own name for the office of secretary-treasurer and declared himself duly elected. Griffiths read off three candidates for president: defendant Harris, plaintiff Lynch, and John Perry. Once again the meeting erupted when several members attempted to inform Griffiths that Lynch had been nominated for Secretary-Treasurer. Griffiths responded, "I'm running unopposed," and adjourned the meeting.

Based on the foregoing findings, and other evidence introduced at the hearings, I make the additional finding that both before and during the nominations meeting on November 9, 1980, defendants Griffiths and Harris deliberately attempted to deny plaintiffs their rights to nominate candidates, attend membership meetings, and participate in the deliberations of such meetings, and their rights to meet and assemble freely with other members and express their views.

### B. Conclusions of Law

In a recent case arising under Title I of the LMRDA, the Court of Appeals recog-

---

**19.** [Footnote 19 released to the parties but omitted from publication.]

**20.** In waiving the 50% meeting attendance requirement, defendant Griffiths relied on *Local 3489, United Steelworkers of America v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), in which the Supreme Court held that

such a rule violated 29 U.S.C. § 481(3) where it disqualified 96.5% of a local's members.

**21.** In all, Griffiths read off the names of 12 persons declared ineligible and 16 persons declared eligible to run for local office. Their names are listed in Plaintiffs' Exhibit 1.

nized that a plaintiff, "on a motion for preliminary injunction, must show that 'in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits.'" *Maceira v. Pagan*, 649 F.2d 8, at 15 (1st Cir. 1981) (quoting *Nat. Tank Truck Carriers, Inc., v. Burke*, 608 F.2d 819, 823 (1st Cir. 1979) (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975))). In addition, plaintiff must establish that the injury plaintiff will suffer if an injunction is not granted outweighs any harm that granting injunctive relief would inflict on the defendant, and that the public interest will not be adversely affected by the granting of preliminary relief. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981).

### 1. Likelihood of Success on the Merits

Based on the findings of fact stated above, I conclude that plaintiffs have shown a substantial likelihood of prevailing on their claims that defendants violated 29 U.S.C. § 411(a)(1) by denying plaintiff Jerome Crowley and others their equal right to attend membership meetings and nominate candidates through the imposition of a suddenly announced computerized dues receipt requirement for entry into the nominations meeting and the application of such requirement in a discriminatory fashion. In addition, I conclude that plaintiffs are likely to prevail on their claim that the computerized dues receipt requirement was imposed in retaliation for plaintiffs' expressed intention to nominate candidates to oppose the incumbent Local officers and with the objective of suppressing dissent within the Local, in violation of 29 U.S.C. § 411(a)(2).

I also conclude that plaintiffs have established a substantial likelihood of prevailing on their claim that defendant Griffiths violated 29 U.S.C. § 411(a)(1) and (2) by refusing to allow plaintiff Lynch to run against him for the office of secretary-treasurer.

Finally, I conclude that there is not a substantial likelihood that plaintiffs will establish that the defendants applied the 24-month rule in a discriminatory fashion in retaliation for plaintiffs' exercise of their free speech rights under 29 U.S.C. § 411(a)(2). Although plaintiffs contend that defendant Griffiths declared supporters of the incumbents eligible despite their late payment of dues, the supporters in question were on check-off during the months in which they made late dues payments. Because 29 U.S.C. § 481(e) requires that union members on check-off not be declared ineligible for office due to delays resulting from late payment by withholding employers, *see* note 9, *supra*, there is no evidence to support a finding that defendants favored their supporters when applying the 24-month rule.[22]

### 2. Irreparable Injury

If preliminary relief ordering that a new nominations meeting and election be held is denied, plaintiffs will remain in a Local in which incumbent officers continue to hold office despite their likely violations of Title I. Such an outcome will send an implicit message to Local members that union leaders can unlawfully move to stifle dissent within the Local and yet continue to enjoy the benefits of union office. The resulting "chilling effect" on the exercise of the members' right of free expression constitutes irreparable harm. *Maceira v. Pagan, supra*, at 15. *See Schonfeld v. Penza, supra*, 477 F.2d at 903–04: "[F]ederal courts need not necessarily wait to intervene until some sanction is directly imposed on union dissidents, for once suppressed 'the democratic spirit' within a union 'may not soon be revived,'" (quoting *Navarro v. Gannon*, 385 F.2d 512, 520 (2d Cir. 1967), *cert. denied*, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968).

**22.** In the upcoming election, defendants have offered to end one aspect of the allegedly discriminatory application of the 24-month rule. Local 82 has agreed to credit a dues payment made by a member not on check-off as soon as the payment is received by a shop steward, thereby affording members not on check-off a treatment similar to that received by members on check-off. *See* n. 17, *supra*.

### 3. Weighing Harm to Defendants

The court is well aware of the substantial burden imposed on Local 82 by a preliminary injunction ordering a new election, and would be reluctant to order such relief if defendants had not been given the opportunity to present all of their evidence in opposition to plaintiffs' request. However, the court gave defendants such an opportunity, hearing evidence for five days in December 1980 and an additional day in March 1981. Because of the full hearing afforded to the parties, it is less likely that additional evidence would be produced at trial that will alter the findings and conclusions stated herein. Therefore, I conclude that the irreparable harm that plaintiffs will suffer if injunctive relief is denied outweighs the burden imposed on defendants by the preliminary injunction.

### 4. Public Interest

In *Navarro v. Gannon, supra,* the court described Congress' objective in adopting Title I as follows:

> The LMRDA was enacted with the clear purpose of assuring "the full and active participation by the rank and file in the affairs of the union." The Congress by passing a "Bill of Rights" for union members determined that the efficiency of a monolithic union under autocratic rule was gained at too great a price if it necessitated any sacrifice in the members' rights to determine the course of their organization. The balance was struck in favor of union democracy. Only a union responsive to the rights of all its members can achieve the ideals of responsibility, opportunity and self-determination that are recognized as fundamental values in the labor movement.

385 F.2d at 518 (citation omitted) (quoting *American Federation of Musicians v. Wittstein,* 379 U.S. 171, 182–83, 85 S.Ct. 300, 306–307, 13 L.Ed.2d 214 (1964)).

In examining the request for preliminary relief, the court is well aware that in adopting the Act, Congress did not intend to permit "wholesale judicial intervention" in the affairs of unions. *See Packer v. International Brotherhood of Teamsters,* 428 F.Supp. 145, 148 (W.D.Pa.1977). However, where, as here, the mechanisms of union self-government have been tainted by conduct that undermines the Congressional goal of union democracy, this court must conclude that granting the preliminary injunction will serve the public interest.

### IV.

### DUES CLAIM

#### A. Findings of Fact

On February 27, 1981, the court allowed plaintiffs' motion to amend the complaint to add, *inter alia,* a claim that all dues increases implemented by Local 82 since September 1976 were adopted in violation of 29 U.S.C. § 411(a)(3). *See* note 10, *supra.* Defendants have moved to dismiss the amendments to the complaint.

The relevant facts are not in dispute.[23] Before October 1, 1976, the monthly membership dues rate for members of Local 82 was $9.00. By-laws art. VII, § 5. At a convention in June 1976, the International Union adopted[24] its 1976 International Constitution, which provides for mandatory increases in the monthly dues of members of the International Union. Article X, section 3(d) of the International Constitution states that:

> Dues of members of the International Union, payable through their respective Local Unions, shall not be less than eight dollars ($8.00) per month. ...
>
> All dues, whether below, at or above the minimum of eight dollars ($8.00) shall

---

**23.** The court's statement of the facts is a summary of the undisputed portions of Defendants' Proposed Findings of Fact with Regard to the Issues Raised by the Second Amended Complaint, stipulations made at the March 6, 1981 hearing, and the testimony and exhibits received during the hearings in this action.

**24.** Plaintiffs do not contend that the June 1976 convention was unlawfully convened, or that any procedural irregularity invalidates the convention's adoption of the International Constitution.

be increased by no less than two dollars ($2.00) per month effective October 1, 1976, and an additional one dollar ($1.00) per month effective October 1, 1977. In addition, members whose rate of dues on October 1, 1977 is less than two times their hourly earnings shall have their monthly dues increased up to the equivalent of two times their hourly earnings or by an additional one dollar ($1.00), whichever is a lesser amount. Effective October 1, 1978, and each October 1 thereafter, members whose rate of dues is less than two times their hourly earnings shall have their monthly dues increased up to the equivalent of two times their hourly earnings or by two dollars ($2.00) per month, whichever is a lesser amount.

.    .    .    .    .

After the increases provided above, dues shall be set on October 1 of each subsequent year on the basis of attaining a dues rate equivalent to twice the hourly earnings . . . .

On October 1, 1976, Local 82 increased [25] the monthly dues of its members by two dollars to $11. The two dollar increase is consistent with the formula set forth in Article x, section 3.

On October 1, 1977, Local 82 raised the monthly dues of all members from $11 to $12. Because the average hourly earnings of a member of Local 82 were then $6.45, under the terms of Article x, section 3,[26] the Local's monthly dues were required to be $13.

On October 1, 1978, Local 82 raised the monthly dues of all[27] its members to $13. Because the average hourly earnings at that time were $6.70, the October 1978 dues rate was consistent with that required by the International Constitution.

On June 1, 1979, Local 82 raised the monthly dues rates for members employed at twelve moving companies by either one or two dollars to $14 or $15, depending upon the member's wage rate. Similarly, on August 1, 1979, Local 82 increased the monthly dues rates for members employed at two other companies by one or two dollars.

On October 1, 1979, Local 82 increased the monthly dues of all remaining members whose wage rates had increased since April 1979 by one or two dollars to $14.00 or $15.00, again depending on their wage rate. Under the terms of article X, section 3, and the average hourly wage rates in effect in October 1979, all members of Local 82 were required to pay $15.00 per month.

Local 82 increased the monthly dues of additional members employed by companies that had not implemented wage increases before October 1979 on November 1 and December 1, 1979, and on January 1, 1980. By March 1980, all members of Local 82 were paying monthly dues of either $13, $14, or $15, depending on their hourly earnings rates. On April 1, 1980, the monthly dues of all members was set at $15.

Although on October 1, 1980 the average hourly earnings for Local 82's members was $7.92, which under article X, section 3 would have required a $16 monthly dues rate, the $15 monthly rate established on April 1, 1980 remains in effect.

.    .

### B.   Conclusions of Law

Plaintiffs advance two arguments in support of their claim that the dues increases implemented by Local 82 violate 29 U.S.C. § 411(a)(3). Their first contention is that article X, section 3 of the International Constitution and 29 U.S.C. § 411(a)(3)(B)(i)

---

**25.** It is not clear from the materials before the court whether the October 1976 dues increase, and the subsequent dues increases, resulted from a vote of the Executive Board of Local 82 or from an action by one or more of its officers. However, neither party contends that the dues increases implemented by Local 82 were enacted in compliance with 29 U.S.C. § 411(a)(3)(A). *See* n. 10, *supra.*

**26.** Article X, section 3 provides: "When calculating the rate of monthly dues based on two times the hourly earnings, the hourly earnings shall be doubled and rounded to the nearest whole dollar."

**27.** Apparently a few employers failed to implement the increase for a number of Local 82 members who were on check-off until the following month.

do not authorize a local union to increase membership dues without a majority vote of its members. 29 U.S.C. § 411(a)(3)(A). Alternatively, plaintiffs argue that even if the International Constitution and 29 U.S.C. § 411(a)(3)(B)(i) authorize Local 82 to implement annual dues increases without a vote of the membership, the Local's failure to comply with the requirements of article X, section 3 invalidates the increases instituted from October 1977 through the present. Plaintiffs seek a declaration that all dues increases adopted by Local 82 since September 1976 are invalid, and that any member who is otherwise eligible may hold Local office "if he is in compliance with the 24 month rule once all his dues payments in excess of $9.00 per month are credited prospectively toward subsequent dues payments."

## 1. Defendants' Motion to Dismiss

■ Defendants have moved to dismiss the dues claim on four grounds.[28] Their first contention is that because the disposition of plaintiffs' claim that article X, section 3 of the International Constitution does not authorize a local union to increase membership dues, may adversely affect the interests of the International Union, the court must join the International Union as a party or dismiss the claim.

In relevant part, Rule 19(a) provides that:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . . If he has not been joined, the court shall order that he be made a party.

Two courts have held that in an action in which the validity of a provision of a union constitution is challenged, Rule 19 requires the union to be joined as a party. *Krulikowsky v. Metropolitan District Council,* 270 F.Supp. 122 (E.D.Pa.1967); *Keenan v. Metropolitan District Council,* 266 F.Supp. 497, 499 (E.D.Pa.1966) ("The Brotherhood has a definite interest in maintaining the integrity of the laws of its organization, and unless it is brought into court, it would be running the risk of the Court's holding part of those laws invalid without having been a party to the suit."). Because the provision challenged by plaintiffs herein governs dues rules in effect throughout the United States, the International Union's interests may be drastically impaired by a determination that article X, section 3 violates 29 U.S.C. § 411(a)(3). Therefore, if at the next conference in this case plaintiffs state that they wish to press their challenge to the provision, the court will require plaintiffs to show cause why the court should not order that the International Union be joined as a party defendant. However, because plaintiffs have failed to show a probability of success on the merits of their challenge to article X, section 3, *see* pp. 632–633, *infra,* the court need not delay the granting of other preliminary relief pending resolution of that issue. But because defendants have failed to show that the International Union cannot be made a party, their motion to dismiss for failure to join an indispensable party will be denied. Fed.R.Civ.P. 19(a).

■ Second, defendants contend that to the extent that plaintiffs' dues claim challenges actions taken by the International Union or Local 82 more than three years before the filing of this litigation, it is bound by Massachusetts' three year statute of limitations for tort actions. Mass.Gen. Laws ch. 260, § 2A.[29] Plaintiffs argue that the applicable statute of limitations is the

28. Defendants' fourth ground for dismissal, plaintiffs' failure to exhaust internal union remedies, is discussed at pp. 623–624, *supra.*

29. "Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues."

six year period of contract actions set forth in Mass.Gen. Laws ch. 260, § 2.[30]

Because there is no applicable federal statute of limitations for actions arising under Title I of the LMRDA, the federal courts must look to state law for the appropriate limitations period. *Berard v. General Motors Corp.*, 493 F.Supp. 1035 (D.Mass. 1980). In determining which state limitations period to apply, "the federal courts will look to the state statute or remedy 'most analogous' to the particular . . . cause of action." *Burns v. Sullivan*, 619 F.2d 99, 105 (1st Cir. 1980) (quoting *Runyan v. McCrary*, 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976)). "The most analogous state law will be applied unless it is 'inconsistent with the federal policy underlying the cause of action under consideration." *Burns v. Sullivan, supra*, 619 F.2d at 105 (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975)).

■ Under Massachusetts law, a court must look "to the 'gist of the action' or the essential nature of the plaintiff's claim," in determining what statute of limitations to apply. *Hendrickson v. Sears*, 365 Mass. 83, 85, 310 N.E.2d 131, 132 (1974).

When characterizing an action under 29 U.S.C. § 411(a)(3), courts have recognized that although the rights established by the LMRDA are statutory, not contractual, *Copitas v. Retail Clerks International Ass'n*, 618 F.2d 1370, 1372 (9th Cir. 1980), the dominant form of relief sought, restitution of unlawfully collected dues, is quasi-contractual in nature. *Dantagnan v. ILA Local 1418*, 496 F.2d 401, 402–03 (5th Cir. 1974). *See Peck v. Associated Food Distributors of New England, Local 138*, 237 F.Supp. 113, 115 (D.Mass.1965). Thus, in *Dantagnan*, the Fifth Circuit held that Louisiana's statute of limitations for actions in quasi-contract applied to an action brought under 29 U.S.C. § 411(a)(3) because appellants sought restitution of unlawfully collected dues, as well as declaratory and in-

junctive relief, but not "damages for the wrongful act of collection." *Id.* at 403 n. 6.

■ The same result is required under Massachusetts law. "The usual form of action to recover from another money which in equity and good conscience he is not entitled to keep is in contract." *Kagan v. Levenson*, 334 Mass. 100, 103, 134 N.E.2d 415 (1956). *See also New Bedford v. Lloyd Investment Assoc., Inc.*, 363 Mass. 112, 292 N.E.2d 688 (1973) (holding that an action to recover payments made by mistake was "quasi-contractual," and applying Massachusetts' six year statute of limitations for contract actions). In the instant case, although plaintiffs seek only a declaration that the dues increases implemented by Local 82 since September 1976 violated 29 U.S.C. § 411(a)(3), the essence of their claim is the contention that defendants unlawfully collected dues payments. Therefore, the six year statute of limitations for actions of contract applies to plaintiffs' § 411(a)(3) claim, and defendants' motion to dismiss on statute of limitations grounds will be denied.

■ Defendants' third contention is that laches bars plaintiffs' dues claim. An action is barred by laches only when there has been unreasonable delay in seeking relief that has resulted in prejudice to the defendant. *Gardner v. Panama R. Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951); *Cities Service Oil Co. v. Puerto Rico Lighterage Co.*, 305 F.2d 170 (1st Cir. 1962). Because laches is an affirmative defense, Fed.R.Civ.P. 8(b), and both the length of the delay and the existence of prejudice to the defendant are questions of fact, *Churma v. United States Steel Corp.*, 514 F.2d 589, 593 (3d Cir. 1975), ruling on the merits of a claim of laches raised by a motion to dismiss is inappropriate. *See Morgan v. Sharon Pennsylvania Board of Education*, 472 F.Supp. 1157, 1160 (W.D.Pa.1979).

---

**30.** "Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied . . .

shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."

Therefore, the motion to dismiss the dues claim on laches grounds will be denied.[31]

2. Probability of Success on the Merits

■■■ Plaintiffs assert two legal theories in support for their claim that defendants violated 29 U.S.C. § 411(a)(3). *See* note 10, *supra*. First, citing *Mori v. International Brotherhood of Boilermakers*, 482 F.Supp. 838 (N.D.Cal.1979), plaintiffs contend that 29 U.S.C. § 411(a)(3) prohibits Local 82 from increasing membership dues in accordance with article X, section 3 of the International Constitution without a majority vote of its members as required by 29 U.S.C. § 411(a)(3)(A). Defendants assert that *Mori* was incorrectly decided, and that 29 U.S.C. § 411(a)(3)(B)(i) authorizes an international union to increase the dues of members of the international union payable through their local unions "by majority vote of the delegates voting at a regular convention . . . ." *Id.*

*Mori* held that a complaint alleging that at its regular convention an international union had enacted a dues provision requiring "field construction members" to make a supplemental payment to their local in addition to their regular local dues stated a claim for relief under 29 U.S.C. § 411(a)(3). The court declared that 29 U.S.C. § 411(a)(3)

> states clearly that dues payable to a local labor organization may be increased only according to the methods provided in Section 411(a)(3)(A), and not by the regular convention of an international. Section 411(a)(3)(B) establishes the methods for increasing dues payable to 'a labor organization *other than* a local labor organization . . . .'

482 F.Supp. at 841 (quoting 29 U.S.C. § 411(a)(3)(B) (emphasis in original opinion).

In the instant case, article X, section 3(d) of the International Constitution purports to set "*[d]ues of members of the International Union, payable through their Local Unions* . . ." (emphasis supplied). Thus, here as in *White v. Local No. 207, Laborers*

*International Union*, 387 F.Supp. 53 (W.D. La.1974), an international union has enacted an "across the board" increase in dues to be paid by all its members to their local unions. An international union's authority under 29 U.S.C. § 411(a)(3)(B)(i) to adopt such an across the board increase at its regular convention is well-established. *See id.*, at 56; *Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers*, 362 F.2d 891 (1st Cir.), *cert. denied*, 385 U.S. 947, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966); *Ranes v. Office Employees, Local 28*, 317 F.2d 915 (7th Cir. 1963). *See also King v. Randazzo*, 346 F.2d 307 (2d Cir. 1965); *White v. King*, 319 F.Supp. 122 (E.D.La.1970) (both holding that 29 U.S.C. § 411(a)(3)(B) authorizes an intermediate union to establish the dues rates payable to the intermediate union by its members).

In *Local No. 2, supra*, a local challenged an increase in the minimum local dues that was implemented by the international after a referendum by the membership of its constituent locals. The increase was also later enacted "retroactively" by a vote at the international's convention. After holding that the initial referendum violated 29 U.S.C. § 411(a)(3)(A), the Court of Appeals for the First Circuit upheld the plaintiff's contention that the international convention's action could not retroactively validate an increase that was initially void. However, in so doing the court stated that "[t]here is no doubt that under the statute this convention could validly vote a general dues increase effective prospectively and to this extent we uphold its action." 362 F.2d at 896 (footnote citing 29 U.S.C. § 411(a)(3)(B)(i) omitted).

The rationale for allowing an international union to increase the minimum dues rate payable to its locals was set forth in *Ranes v. Office Employees International Union, supra*, in which the Court of Appeals for the Seventh Circuit held that by a vote at its regular convention an international may establish the minimum and maximum dues

---

**31.** However, in considering plaintiffs' request for preliminary relief on the dues issue, the court has considered the laches question. *See* pp. 633–634, *infra*.

that locals may collect from their members. After examining the legislative history of the LMRDA, which it found was silent on the issue, the court concluded that 29 U.S.C. § 411(a)(3)

> embodies congressional recognition of the existence of a sphere of interest in both international and local unions in the area of membership dues. Traditionally, international unions have exercised primary jurisdiction over affairs of their affiliated local unions, including the control of the local dues structure sufficient to insure the financial health of the union structure. Many international unions exercise control in the latter sphere of interest by the device of prescribing the minimum rate for the dues which each of their locals shall collect from its members. We cannot assume that Congress was unaware of the traditional structure and dues practices of labor unions when it enacted [29 U.S.C. § 411(a)(3)], or that Congress, being aware of the traditional structure and practices, intended by enacting that Section to strip international unions of their traditional power to control the minima and maxima of rates of dues without one word in the Committee Reports expressing that intention. On the contrary, we must assume that Congress was aware of the established structure and practices and interpret the statute in the light thereof.

317 F.2d at 917–18 (footnotes omitted).

Unlike the dues provision at issue in *Mori*, article X, section 3(d) of the International Constitution merely establishes minimum local dues rates [32] without creating "dues differentials" among members of the international union. *Mori, supra,* 482 F.2d at

843.[33] *Cf. Steib v. New Orleans Clerks, supra,* 436 F.2d at 1106 (Portion of dues increase voted at district convention that was payable only to local union violates 29 U.S.C. § 411(c)(3)). Therefore, applying the principles articulated in *Local No. 2* and *Ranes,* I conclude that dues increases implemented by Local 82 in accordance with the provisions of article X, section 3 of the International Constitution do not violate 29 U.S.C. § 411(a)(3).

Plaintiffs' second contention is that even if article X, section 3 of the International Constitution is a lawful means for increasing union dues under the Act, Local 82 has failed to increase its dues in the manner required by article X, section 3, and has therefore violated 29 U.S.C. § 411(a)(3). The undisputed facts indicate that Local 82 failed to conform to article X, section 3 in two respects. First, the Local increased its dues from $11 to $12 per month in October 1977, not to $13 per month as required by the International Constitution. *See* pp. 628–629, *supra.* Although the Local's failure to raise its dues sufficiently may violate the International Constitution, such a failure does not establish a valid claim under Title I for the relief requested by plaintiffs.

However, it does appear that in June and August 1979, Local 82 increased some members' dues beyond the minimum authorized by the International Constitution until October 1979, and that in November and December 1979, and January and April 1980, defendants increased some members' dues at a time other than that authorized by the International Constitution, in all instances without conducting a secret ballot as required by 29 U.S.C. § 411(a)(3)(A), in viola-

---

32. Article X, section 3(d) provides that "nothing herein contained shall be construed to prohibit any Local Union from adopting a dues scale higher than the one provided herein, either by continuance of established dues formulas or by Local Union action in accordance with applicable law."

33. Although for the reasons stated in the text *Mori* is plainly distinguishable from this case, the court there expressly "decline[d] to follow *Ranes* [as well as *Local No. 2* and *White v.*

*Local No. 207*] by interpreting [29 U.S.C. § 411(a)(3)] in a manner inconsistent with its plain meaning." 482 F.2d at 842–43. For the reasons articulated in the portion of *Ranes* quoted in the text, and because to do otherwise would render meaningless the language in 29 U.S.C. § 411(a)(3)(B)(i) permitting labor organizations to increase dues "by majority vote of the delegates voting at a regular convention . . ." I follow the analysis set forth in *Ranes* rather than that set forth in *Mori*.

tion of 29 U.S.C. § 411(a)(3). Because the court was concerned that members of Local 82 had been guilty of laches for failing to protest the dues increase at the time it occurred, see part IV–B, 1, supra, the April 24, 1981 proposed order included the following language:

Any member who claims that he fails to meet the eligibility requirements stated [in the preliminary injunction] only because

(A) between June 1979 and October 1979, he failed to pay increases in his dues implemented in June or August 1979; or

(B) between November 1979 and October 1980, he failed to pay increases in his dues implemented in November and December 1979 and January and April 1980; must file a claim in writing with the Arbitrators, together with supporting evidence, no later than 15 days before the nomination meeting. The Arbitrators shall make findings as to whether the claimant satisfies the criteria set forth in (A) or (B), and shall compile the claims and findings into a report to be filed with the court not later than 7 days before the nominations meeting, upon which the court shall determine whether a claimant should be permitted to run for office despite his failure to protest sooner the dues increases listed above.

At the conference on April 27, 1981, both plaintiffs and defendants indicated that such language was unnecessary because no individuals met the criteria set forth in (A) or (B). Accordingly, the language was deleted from the preliminary injunction.[34]

## V.

### EXPLANATION OF THE COURT'S ORDER

#### A. The Contents of the Order

Throughout the hearings on the form of the preliminary injunction, it has been the court's intention to issue an order that in-terferes as little as possible with the nomination and election procedures required by the International Constitution and Local By-laws. In large part, the content of the court's order is derived from stipulations and proposals offered by the parties after January 9, 1981, when counsel for defendants first indicated that Local 82 was prepared to conduct a new nomination meeting and election. In their January 15 and 22, 1981 stipulations, see p. 618, supra, defendants proposed that the nominations and election be conducted under the supervision of Teamsters Joint Council 10. When it became clear that plaintiffs would not agree to several of the terms of defendants' stipulation, in particular to the role of Joint Council 10 in the new election, the court issued its February 12, 1981 Proposed Order Concerning The Conduct of the Election, which explicitly incorporated many of the terms of defendants' stipulations and provided for the filing of an undertaking by Joint Council 10 if it consented to supervise the election under the terms and conditions set forth in the court's order. However, at a hearing on February 20, 1981, defendants informed the court that Joint Council 10 was unwilling to file such an undertaking, and requested that all references to defendants' stipulations be deleted from the court's order. At that time, the court requested the parties to determine if they could agree upon a third party to supervise the election. In April 1981, plaintiffs' counsel informed the court that Lawrence Katz, Esquire, in conjunction with the Honest Ballot Association of New England (hereinafter referred to as "the Arbitrators"), would supervise the election. Defendants were given an opportunity to object to the selection of the Arbitrators and have not done so.

Following hearings on plaintiffs' dues claim, the court issued the April 21, 1981 Modified Proposed Order Concerning the Conduct of the Election, which incorporated

---

34. Defendants have stipulated that no member will be disqualified from being a candidate in the forthcoming election for failing to pay a dues increase in any month in which the rate of dues has been changed so long as he pays the additional amount owed to the Local before the start of the nominations meeting ordered by the court.

several of the changes requested by the parties, as well as the court's rulings on plaintiffs' dues claim and defendants' request for bond. See part V–C, *infra*. At a conference on April 22, 1981, counsel for the parties and a representative of the Arbitrators made additional suggestions concerning the terms of the proposed order that were incorporated in a stipulation filed with the court on May 5, 1981. The preliminary injunction includes the changes agreed to by the parties.

### B. Defendants' Motion for A Stay Pending Appeal

At the conclusion of the April 22, 1981 conference, counsel for defendants moved pursuant to Fed.R.Civ.P. 62(c) for a stay of preliminary injunction pending appeal. In light of the continuing and irreparable harm that plaintiffs are suffering as a result of defendants' Title I violations, *see* part III–B, *supra*, and plaintiffs' substantial likelihood of prevailing both on appeal and at trial, *id.*, I conclude that defendants' motion to suspend injunction pending appeal should be denied, despite the possibility that defendants will suffer irreparable harm. Under the terms of the preliminary injunction, no person is required to take action for forty days after entry of the order. Therefore, defendants will have ample time to file their notice of appeal and present a request for stay to the Court of Appeals before any action need be taken pursuant to the court's order.

### C. Bond Requirement

Rule 65(c) provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sums as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The determination whether to require security, and the amount thereof, rests in the sound discretion of the court. *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972). In addition to considering the possible harm caused to the enjoined party by an unlawful order, the court may consider the likelihood that the applicant will succeed on the merits, *id.*, his ability to post a substantial bond or surety, *Olshock v. Village of Skokie*, 401 F.Supp. 1219, 1222 (N.D.Ill.1975), and the possible adverse impact that requiring substantial security may have on the enforcement of rights created by remedial legislation. *National Resources Defense Council v. Morton*, 337 F.Supp. 167 (D.D.C.1971), *aff'd on other grounds*, 458 F.2d 827 (D.C.Cir.1972) (National Environmental Policy Act); *Bass v. Richardson*, 338 F.Supp. 478, 491 (S.D.N.Y.1971) (Social Security Act).

In the instant case, Local 82 seeks a bond sufficient to compensate it for the expense of conducting the nomination meeting and election ordered by the court. According to the papers filed by the arbitrators who will supervise the election, their expenses are likely to be approximately $2500. In addition, under the court's order, Local 82 will be required to send notices of the nomination meeting and ballots to each of its approximately 750 members. Thus, the total cost of implementing the court's order may exceed $3000. Plaintiffs do not contend that they are indigent. However, they assert that posting a bond sufficient to cover the costs of the new election would impose a severe financial hardship upon them.

Applying the factors listed above, the court concludes that plaintiffs should not be required to post a bond. When it enacted the LMRDA, Congress sought to ensure "the full and active participation by the rank and file in the affairs of the union." *American Federation of Musicians v. Wittstein*, *supra*, 379 U.S. at 182–83, 85 S.Ct. at 306–307. *See* part III–B, *supra*. Thus, union members were given the right to seek relief in the courts when misconduct by union officials undermines union democracy. *See United Brotherhood of Carpenters of America v. Brown*, 343 F.2d 872, 882–83 (10th Cir. 1965). Plaintiffs have shown a strong likelihood of establishing that defendants violated their rights secured by Title I of the LMRDA. *See* part

III–B, *supra.* As a result of defendants' probable violations, plaintiffs have been put to the substantial expense of securing preliminary relief, while defendants have used union funds to pay witnesses and counsel for their appearances in this action. *See Hall v. Cole, supra,* 412 U.S. at 13, 93 S.Ct. at 1950. In light of the Congressional policy favoring union democracy, *see Navarro v. Gannon, supra,* 385 F.2d at 518, and the adverse impact that imposing a substantial bond requirement would have on the vindication of rights afforded by Title I, plaintiffs will not be required to post a bond under Rule 65(c).

*Order accordingly.**

* The terms of the Preliminary Injunction are as follows:

For the reasons stated in the accompanying Memorandum, it is hereby ORDERED and DECLARED that:

1. The order entered by the court on December 12, 1980 is modified as set forth below.

2. The nominations received at the November 9, 1980 meeting of defendant Local 82, and the election originally scheduled to be completed on December 13, 1980, are legally without effect pending further order of this court. The ballots from that election shall remain in the custody of an officer of this court.

3. Local 82 shall provide for a nomination meeting and mail ballot election for the officers of Local 82, to be supervised and conducted by Lawrence Katz, Esquire, in conjunction with the Honest Ballot Association of New England ("the Arbitrators") in accordance with paragraph 9 of this order. The nomination meeting shall be held within 80 days of the entry of this order. Subject to applicable law and this order, the nomination meeting and election shall be conducted in accordance with the Constitution and By-laws of Local 82, and the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

4. Under the supervision of the Arbitrators, Local 82 shall mail each member a combined notice of the nomination meeting and election at his last known home address at least 40 days before the date of the nomination meeting, and, in addition, shall mail notices for posting at least 40 days before the date of the nomination meeting to the stewards or, if there is no steward, to the employer, at the facilities of all employers that have collective bargaining agreements with Local 82.

5. The combined notice of nomination and election will contain the following information:

(a) The date, time and place of the nomination meeting.

(b) A declaration that:

The purpose of this meeting will be the nomination of officers for Local 82. After hearings in the Federal District Court, the incumbent officers of Local 82 have offered to have, and the court has ordered, a new election, which will be conducted by a third party in order to assure that the nominations and election are conducted in a fair and orderly fashion.

(c) The list of offices to be filled: President and Business-Agent, Vice-President, Secretary-Treasurer and Business-Agent, Recording Secretary, and three Trustees, all of whom together constitute the Executive Board.

(d) The officers elected in the upcoming election will complete the term of office which commenced on January 1, 1981 and which will expire on December 31, 1983.

(e) The eligibility requirements for members to attend the nominations meeting: Every member whose dues are paid up through the month before the month in which the nomination meeting is conducted has the right to attend the nomination meeting. Members may be admitted to the nomination meeting upon presentation of a TITAN computer receipt showing payment through the prior month or upon presentation of a TITAN receipt supplemented by payment at the door or payment evidenced by a temporary receipt, which TITAN receipt and other evidence taken together verify payment of dues through the prior month. Local Union officers, or their designated agents, shall receive dues payments at the door and shall issue temporary dues receipts therefor.

(f) The eligibility requirements to run for office:

(i) Every member in good standing, by the payment of his dues on or before the last business day of the current month, in accordance with the International Constitution, who has been in such continuous good standing for each consecutive month in the twenty-four (24) month period immediately prior to nominations, shall be eligible to hold office if otherwise qualified under the International Constitution, Local By-Laws and applicable law. Dues are considered to have been received by the Local Union when they are in the physical possession of the Union or its authorized agent. Thus, dues paid by mail are received when the dues are delivered to the Union; dues paid in person at the Union hall are received at the time tendered; and dues paid to a steward, business agent, or other authorized collection agent are received when paid to the agent. Payment of dues after their due date does not restore good standing status for such month in computing the continuous 24 month good standing status as a condition of eligibility for office. However, a member who has made an incor-

rect dues payment in any month in which the rate of dues has been changed shall be considered in good standing for the month(s) in question so long as he paid the difference in the rates of dues owed to the Local Union before the start of the nomination meeting scheduled under the order of this court.

(ii) A member otherwise qualified to run for office must be nominated at the nomination meeting by a member in good standing other than the nominee and seconded by a member in good standing other than the nominee. A member is entitled to nominate or second the nomination of only one candidate for each office.

(iii) The 50% meeting attendance eligibility requirement contained in Article VI of the Local Union By-Laws is waived for this nomination and election.

(iv) In order to be nominated for office, a member must either be present at the nomination meeting to accept the nomination or must have a signed statement indicating his acceptance of nomination for a particular office delivered to the presiding official at said meeting.

(v) Members intending to run for office are urged to verify their own eligibility as well as the eligibility of their potential nominators and seconders prior to the nominations meeting by making a request, in writing, to the Arbitrators. The Arbitrators shall render decisions concerning the eligibility of any candidate, nominator, or seconder, in accordance with the procedures set forth in paragraph 5(i) of this notice.

(g) The nomination and election rules are set forth in the Local By-Laws and International Constitution which are available for inspection at the Local 82 offices and may be purchased upon payment of $.50.

(h) All officers and business agents elected in the forthcoming election shall, by virtue of such election, be delegates to any International Convention which may take place during their term of office, and the officers elected in the forthcoming election shall be delegates to all Teamster subordinate bodies and all other conventions in accordance with the provisions of Article II, Section 4(f) and Article III, Section 5 of the International Constitution.

(i) Any member may request in writing that the Arbitrators review his eligibility to hold office, or to participate in the nominations meeting as a nominator or seconder at any time after the mailing of the notices of the nominations meeting and before the nominations meeting. The Arbitrators shall make a report on the eligibility of that member within seven days thereafter to any interested member. Any member may challenge the determination of the Arbitrators that a member is either eligible or not eligible to be a candidate for office, or be a nominator or seconder at the nominations meeting. Any challenge to a decision of the Arbitrators must be made, in writing, within

two days of the Arbitrators' decision and must set forth the ground on which the challenge is based. The Arbitrators shall hear the challenge and make a written determination within five days of receiving the challenge. Any member asserting that the Arbitrators' determination of the facts underlying his claim for eligibility is not supported by substantial evidence must file a request to set aside the Arbitrators' decision with the Arbitrators within five days of the decision, for transmittal to the court along with a report by the Arbitrators.

After the nominations meeting, the Arbitrators shall review the eligibility of any candidate whose eligibility had not previously been determined and shall make a determination of each such candidate's eligibility within 48 hours of the nominations meeting. If, following the nominations meeting, the Arbitrators determine that a candidate is ineligible, he shall notify the candidate by telephone within 48 hours of the nominations meeting and shall confirm this communication to the candidate in writing. In addition, the Arbitrators shall notify counsel for the plaintiffs and defendants by telephone of the eligibility determinations made following the nominations meeting, within 48 hours of the nominations meeting, and shall confirm this communication to counsel in writing. Challenges to the decisions of the Arbitrators concerning the eligibility of the nominees must be filed, in writing, with the Arbitrators within 48 hours of the Arbitrators' decision and must set forth the specific basis upon which the challenge is made. The Arbitrators shall hear the challenge and make a written determination within 7 days. Any member wishing to appeal the determination of the Arbitrators must file a request to set aside the Arbitrators' decision with the Arbitrators within 48 hours of the decision for transmittal to the court along with a report by the Arbitrators.

j. All arrangements for distribution of campaign literature shall be made by the Arbitrators consistently with the By-Laws, International Constitution and applicable law.

k. The election shall be conducted by mail ballot. The notice will specify the date ballots and other election materials and instructions will be mailed, the date and time ballots will be collected for counting, and the location of the ballot count. The notice will also specify that voting packets will be mailed to each member's last known home address at least 20 days before the counting of the ballots. The notice will describe the procedure to be followed to obtain a ballot if the member does not receive a ballot in the mail. If two ballots are received from the same member, both will be declared null and void and not counted.

l. A member's vote will be counted only if he has paid his dues through the month prior to the month in which the election is held. Members may pay their dues before the close of business at 5:00 p. m. on the day before the counting of the ballots.

m. Each candidate, at his own expense, shall have the right to have an observer other than himself present for the mailing of ballots, the removal of ballots from the post office, and the subsequent counting of the ballots.

6. All members meeting the eligibility criteria set forth in paragraph 5(e) shall be permitted to attend the nominations meeting.

7. All members meeting the eligibility criteria set forth in paragraph 5(f) shall be permitted to run for office.

8. All members meeting the eligibility criteria set forth in paragraph 5(1) shall be permitted to vote.

9. The Arbitrators seeking to supervise and conduct the nominations and election required by this order shall file an undertaking with the court indicating their consent to the terms and conditions of this order, and in addition, shall:

a. Provide for the designation of an official to answer inquiries and make reports on members' eligibility to hold office as set forth in paragraph 5(i).

b. Make all arrangements for distribution of campaign literature as set forth in paragraph 5(j) of this order.

c. Ensure that no member of the Arbitrators who participates in the supervision or conduct of the nomination and election required by this order shall have any interest in the outcome of the election.

10. Defendants Bart A. Griffiths, George Harris, and Local 82 are enjoined from violating the equal rights of members of Local 82, guaranteed by 29 U.S.C. § 411,

(a) to nominate candidates in the election to be conducted in accordance with this order, to vote in the election, to attend all meetings of Local 82 in which business related in any way to this election is conducted, and to participate in the deliberations and voting upon business of such meetings, subject to the rules and regulations of the constitution and bylaws of the union;

(b) to meet and assemble freely with other members and to express any views, arguments, or opinions relating to the nominations and election to be conducted in accordance with this order, and to express, at meetings of Local 82 in which business is conducted relating in any way to this election, any views upon candidates or upon any business properly before such meetings, subject to the rules and regulations established in this order and in the rules and regulations of the constitution and bylaws of the union.

11. This order shall remain in effect until further order of this court.

12. Local 82 shall pay the fees and expenses incurred by the Arbitrators in discharging their responsibilities under this order in the amount determined by the Court and shall advance to the Arbitrators the amounts necessary to cover the postage required to mail the notices and balloting materials necessitated by this order.

13. Plaintiffs are not required to post a security under Fed.R.Civ.P. 65(c).